UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| SERENA R. MARTZ, | : Case No. 3:19-cv-281 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

## I. Introduction

In July 2015, Plaintiff Serena R. Martz filed an application for Disability Insurance Benefits, Supplemental Security Income, and a period of disability benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge Kevin R. Barnes concluded Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed an action before this Court, seeking a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), Plaintiff's Reply (Doc. No. 14), and the administrative record (Doc. No. 8).

## II.     Background

Plaintiff asserts that she has been under a disability since April 1, 2014. Plaintiff originally alleged disability beginning November 17, 2011, but amended her alleged onset date. On the amended alleged disability onset date, Plaintiff was forty-four years old. At that time, she was considered a "younger person" under Social Security Regulations. *See* § 404.1563(c); 20 C.F.R. § 416.963(c).[1] She has a limited education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 8-2, Page ID 64-78), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 13), and Plaintiff's Reply (Doc. No. 14). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III.    Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the legal criteria – may result in reversal even when the record contains substantial evidence supporting the factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

3

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### IV. The ALJ's Decision

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since her amended alleged disability onset date, April 1, 2014.

Step 2: She has the severe impairments of status/post cervical spine fusion with chronic radicular pain, bilateral bone spurs, chronic obstructive pulmonary disease, bipolar disorder, anxiety, and obesity.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work," subject to the following limitations (1) standing for approximately 4 hours in an 8 hour workday, (2) sitting for approximately 4 hours in an 8 hour workday, (3) requires a sit/stand alternative for 5-10 minutes every 60 minutes provided she is not off task more than 10% of the workday, (4) no more than occasional reaching overhead bilaterally, (5) no concentrated exposure to environmental irritants such as fumes, odors, dust, gasses, poorly ventilated areas, or industrial chemicals, (6) no exposure to hazardous machinery or unprotected heights, (7) no crawling or climbing of ladders, ropes, or scaffolds, (8) limited to simple, routine, repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple, work-related decision, and with few, if any, workplace changes, and (9) only occasional interaction with coworkers and general public with no tandem tasks.

  Step 4:  Plaintiff was unable to perform any past relevant work.

  Step 5:  Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 8-8, PageID 67-78). Based on these findings, the Administrative Law Judge concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 78.

## V. <u>Discussion</u>

Plaintiff advances several arguments in her Statement of Errors. (Doc. No. 9, PageID 1336). She first alleges that her carpal tunnel syndrome was erroneously classified at Step Two as a non-severe impairment, rather than a severe impairment. *Id.* Plaintiff further contends that the residual functional capacity assessment does not account for the medical source opinions and medical evidence, and she also challenges the hypothetical that was posed to the vocational expert at the hearing. *Id.*

### I. <u>Severe Impairments</u>

Plaintiff argues that her carpal tunnel syndrome should have been classified as a severe impairment at Step Two. (Doc. No. 9, PageID 1343). At Step Two, the ALJ must consider whether a claimant's impairments are "medically determinable impairments" and whether such impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). This is a "*de minimis* hurdle,*"* and "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted).

In the decision, the Administrative Law Judge addressed Plaintiff's carpal tunnel syndrome at Step Two and determined that it was a non-severe impairment. (Doc. No. 8-

5

2, PageID 67-68).  After discussing the relevant medical evidence, he cited two specific reasons for this decision: (1) the physicians recommended conservative treatment, and (2) evidence in the record did not support a finding that carpal tunnel syndrome would cause "more than [a] minimal limitation in [Plaintiff's] ability to work." *Id.* at 68.

Plaintiff maintains the evidence related to her carpal tunnel syndrome exceeds the de minimis threshold. (Doc. No. 9, PageID 1343-45). As reflected in the Step Two analysis, several physicians assessed Plaintiff's carpal tunnel syndrome. (Doc. No. 8-2, PageID 68).

In October 2014, Dr. David Martineau examined Plaintiff after she presented with bilateral hand pain and numbness. (Doc. No. 8-7, PageID 474).  He assessed bilateral carpel tunnel syndrome after noting positive findings on a variety of tests.  *Id.* at 476. Plaintiff underwent the recommended treatment which included a corticosteroid injection. *Id.*  A month later, Dr. Martineau noted Plaintiff's condition had significantly improved in her right hand after receiving the injection.  *Id.* at 471.  Examination findings were mostly normal for both hands, and conservative treatment was recommended.  *Id.* at 472-73.

Another physician, Dr. Barbara Bennett, noted carpel tunnel syndrome.  (Doc. No. 8-8, PageID 627).  Upon referral from Dr. Bennett, Dr. Jon Kronberg assessed Plaintiff in 2014 and his impressions included that Plaintiff had "[m]ild carpal tunnel syndrome on the right and borderline carpel tunnel syndrome on the left."  (Doc. No. 8-8, PageID 661).

In February and May 2016, respectively, state agency consultative physicians Dr. Bradley Lewis and Dr. Leanne Bertani assessed Plaintiff's physical residual functional capacity.  Dr. Lewis found Plaintiff had unlimited ability to perform handling, but limited fingering ability in both hands.  (Doc. No. 8-3, PageID 163).  However, Dr. Lewis seems

6

to contradict himself, later stating that Plaintiff "was able to use hands for fine coordination and manipulative tasks," and then generally stating "frequent fingering," which presumably means that Plaintiff had the ability to perform such action. *Id.* at 163-64. Dr. Bertani found Plaintiff had an unlimited ability to perform handling and fingering. *Id.* at 204. She also noted Plaintiff's ability to perform fine coordination and manipulative tasks as well as fine fingering movements. *Id.*

After the hearing in January 2018, the ALJ scheduled a physical consultative evaluation, and the state agency examining physician, Dr. Rohn Kennington, evaluated Plaintiff in February 2018. (Doc. No. 8-2, PageID 120) (Doc. No. 8-10, PageID 1271). Upon physical examination, Dr. Kennington found that "Tinel's sign [was] positive bilaterally at the wrist," "Phalen sign [was] positive bilaterally at the wrist," and there was "some decreased sensitive [sic] to light touch and pinprick in the tips of the fingers of the median nerve distribution in both hands." *Id.* at 1273. He diagnosed Plaintiff with bilateral carpal tunnel syndrome and articulated the following specific work-related restriction: "[h]andling objects would need to be limited and non-repetitive use in light of her bilateral carpal tunnel syndrome." *Id.* On the medical source statement, Dr. Kennington also found Plaintiff could never perform handling or fingering with her left hand. *Id.* at 1281.

Ultimately, the decision reflects that the ALJ engaged in a meaningful analysis before concluding that Plaintiff's carpal tunnel syndrome was non-severe. (Doc. 8-2, PageID 68). The ALJ cites to the assessments of Dr. Martineau, Dr. Kronberg, Dr. Bennett, and Dr. Kennington. *Id.* Several physicians diagnosed Plaintiff with carpal tunnel syndrome since her amended alleged disability onset date, but the record does not reflect

7

considerable treatment for this impairment beyond October 2014. Thus, there is substantial evidence in the record to support the ALJ's decision that Plaintiff's carpal tunnel syndrome would minimally affect her ability to work and is therefore non-severe.

Yet, the analysis does not end when an impairment is found to be non-severe. As Plaintiff acknowledges, an ALJ does not generally commit reversible error in finding that an impairment is non-severe so long as the following conditions are satisfied: (1) the ALJ found claimant has at least one severe impairment; and (2) the ALJ considered both the severe and non-severe impairments at the remaining steps in the sequential evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (when a claimant has "at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps"). However, "to the extent an ALJ determines that an identified impairment, severe or non-severe, does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'" *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013)) (citations omitted).

In the instant case, the first condition is met because the ALJ found Plaintiff had several severe impairments. (Doc. No. 8-2, PageID 71). However, there is no evidence the ALJ meaningfully considered Plaintiff's non-severe impairment of carpel tunnel syndrome beyond Step Two, so the ALJ failed to satisfy the second condition.

8

Only once does the ALJ allude to Plaintiff's non-severe impairment in Step Three, by stating that "there is no evidence in the record that [Plaintiff's] wrist impairments result in an inability to perform fine and gross movements." (Doc. No. 8-2, PageID 68). There is no mention of carpel tunnel syndrome or Plaintiff's ability to perform handling and fingering in Steps Four and Five. At Step Four, the ALJ discusses the aforementioned physicians' medical opinions but excludes any and all reference to their findings related to Plaintiff's carpal tunnel syndrome and related limitations.

For instance, Dr. Kennington's diagnoses as to chronic neck and back pain and COPD are included but not his diagnoses or opined limitations as to carpel tunnel syndrome. *Id.* at 72. Likewise, Dr. Martineau's assessment of thoracic outlet syndrome is included, but there is no mention of his diagnosis of carpel tunnel syndrome or the treatment that he provided to Plaintiff for that issue. *Id.* Additionally, Plaintiff's residual functional capacity assessment includes no limitations related to handling or fingering or any consideration of Dr. Kennington's proposed limitation in those areas.

There is no evidence that Plaintiff's non-severe impairment was considered beyond Step Two. This was in error. *See McQuown v. Comm'r of Soc. Sec.*, No. 3:18-CV-32, 2019 WL 2476803, *7 (Ovington, M.J.) ("The ALJ's lack of meaningful consideration of carpal tunnel syndrome at steps three and four constitutes error under the Regulations."); *see also* Soc. Sec. R. 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

9

## II. Residual Functional Capacity and Hypothetical

In support of her next assertion, Plaintiff focuses on the medical opinions of Dr. Kennington and Dr. Larry James. Plaintiff first alleges the ALJ erroneously rejected Dr. Kennington's opinion, and instead substituted his own lay interpretation of Dr. Kennington's examination. (Doc. No. 9, PageID 1346). This argument lacks merit.

"Partial weight" was assigned to Dr. Kennington's opinion, and the ALJ acknowledged that Dr. Kennington's diagnoses were based on a personal examination of Plaintiff. (Doc. No. 8-2, PageID 75). The muscle strength and range of motion testing were noted to be consistent with the record as a whole, but the ALJ discounted Dr. Kennington's "extreme limitations in [Plaintiff's] ability to do work-related activities" as they were not consistent with the conservative treatment in the record. *Id.*

Based on his objective findings, Dr. Kennington articulated the following specific work-related restrictions:

1. [Plaintiff] would be incapable of any lifting, carrying, pushing, or pulling.
2. Sitting, hearing, speaking, and traveling would be unaffected.
3. Handling objects would need to be limited and non-repetitive use in light of her bilateral carpal tunnel syndrome.
4. Standing and walking would need to be limited to brief periods of time, no more than 15 minutes at a time, with adequate periods allowed for rest and change of position in light of chronic neck and back issues.
5. Mental status was mildly depressed; however, she would be capable of managing benefits if awarded.

(Doc. No. 8-10, PageID 1273). Some of the specific work-related restrictions as to Plaintiff's physical impairments are not supported by Dr. Kennington's own examination. For example, in the medical source statement, Dr. Kennington found Plaintiff would be able to "occasionally" lift and/or carry up to 10 pounds and sit for 30-minutes at a time

10

without interruption or for three hours in a workday. *Id.* at 1279-80. Yet, in articulating specific work-related restrictions, Dr. Kennington opined that Plaintiff would be incapable of any lifting or carrying. *Id.* at 1273. Dr. Kennington additionally opined that her ability to sit would be unaffected. *Id.* Despite the inconsistencies, the ALJ accounted for Plaintiff's deficiencies in this area by requiring a "sit/stand alternative for 5-10 minutes every 60 minutes" and limiting her to sitting for 4 hours in an 8-hour day. These limitations are not grossly contradictory to Dr. Kennington's findings in the medical source statement.

A substantial portion of Plaintiff's argument finds support in Dr. Kennington's opinion as to Plaintiff's non-severe impairment, carpal tunnel syndrome, and the resulting limitations. As determined above, error occurred when the ALJ failed to include this impairment in the remaining steps of the sequential evaluation, including Step Four. Thus, because the ALJ categorically excluded this impairment from Step Four and did not mention it in weighing any medical opinion, it is unfitting to conclude that the ALJ erroneously rejected or discredited Dr. Kennington's opinion on that basis.

In contrast, substantial evidence does not support the ALJ's decision to exclude key portions of the opinion from state agency evaluating psychologist Dr. Larry James. The ALJ noted "Dr. James' recommendations as to the claimant's workplace functional abilities [were] consistent with mental health diagnostic and treatment notes in the balance of the record," and afforded his decision "great weight." (Doc. No. 8-2, PageID 75). In support of this finding, the ALJ emphasized that Dr. James personally examined Plaintiff, administered cognitive testing and reviewed related records. *Id.*

11

Dr. James made the following relevant findings in his functional assessment: (1) Plaintiff would likely experience difficulty performing simple work tasks due to bipolar disorder and panic symptoms, and (2) Plaintiff would likely have difficulty managing anxiety, stress, and demands of workplace challenges as well as responding appropriately in the work place. (Doc. No. 8-10, PageID 1292). Nevertheless, as reflected in the decision, the ALJ limited Plaintiff to "simple, routine, repetitive tasks preformed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and with few, if any workplace changes" and "only occasional interaction with coworkers and general public with no tandem tasks." (Doc. No. 8-2, PageID 71).

While "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim," *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), if an ALJ "assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so." *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *5 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.), Report & Recommendation, *adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 7, 2019) (Sargus, D.J.).

In response to Plaintiff's argument, the Commissioner contends the ALJ in fact did account for Dr. James' opinions. (Doc. No. 13, PageID 1370-71). Specifically, the Commissioner maintains that by including other mental limitation – in addition to simple work tasks – the ALJ appropriately accounted for Dr. James' opinions. *Id.*

The residual functional capacity does account for Dr. James' opinion that Plaintiff likely would have difficulty managing anxiety, stress, and demands of workplace

challenges, as well as responding appropriately in the workplace. For instance, the ALJ limited Plaintiff to "a work environment free of fast-paced production requirements" as well as "simple work-related decisions … with few, if any, workplace changes." (Doc. No. 8-2, PageID 71). Although the ALJ did not explicitly limit Plaintiff to low-stress tasks, the ALJ did limit Plaintiff to routine, repetitive tasks and simple work-related decisions, which appropriately accommodates Plaintiff's difficulty in managing anxiety, stress, and demands.

However, the same cannot be said for the other limitation in question. Although Dr. James found Plaintiff would experience difficulty performing simple work tasks, the ALJ limited Plaintiff to simple work tasks. This seems to directly contradict Dr. James' opinion which was afforded "great weight." There is no requirement that the ALJ adopt Dr. James' opinion verbatim, but when the ALJ elected to limit Plaintiff to simple tasks, the ALJ should have provided some explanation for doing so. If the ALJ had explained this decision or described how, as the Commissioner contends, the other limitations accommodate Dr. James' opinion, then the outcome might be different. For these reasons, the ALJ's decision to disregard Dr. James' opinion and limit Plaintiff to simple tasks was in error.

For her final argument, Plaintiff alleges the ALJ reversibly erred in failing to include the use of an assistive device in the accepted hypothetical or the residual functional capacity. (Doc. No. 9, PageID 1350). She alleges such an error is not harmless because the vocational expert testified an individual like Plaintiff that needed an assistive device would be incapable of light work. *Id.* at 1351. This argument is unpersuasive because the decision to exclude a cane or assistive device is supported by substantial evidence.

13

In support, Plaintiff points to the treatment from her podiatrist and Dr. Kennington's opinion. Plaintiff's podiatrist prescribed a handicap placard. (Doc. No. 8-10, PageID 1256). However, the prescription was for only six months, which presumably was during post-op recovery and was not intended for long-term use. Likewise, although the podiatrist prescribed a wheelchair and cane at different appointments, the podiatrist repeatedly found that these were not necessary. In treatment notes on November 3, 2017, February 2, 2018, and February 14, 2018, the podiatrist noted Plaintiff "ambulate[d] without the need of any assistive devices." (Doc. No. 8-10, PageID 1257, 1261, 1265). Plaintiff's only assistive device in November 2017 was a cast on the right foot. *Id.* at 1265.

Additional notes indicate Plaintiff requested a prescription for a wheelchair in February 2018 and that she reported using a cane "if needed." *Id.* at 1261. The podiatrist prescribed a straight cane and shower chair, but made the following relevant note:

> Today patient requested a note for her disability claim stating she needs to keep her feet elevated all day. I advised patient I am not comfortable with this as her feet and ankles are doing well minus some osteoarthritis flared *and instability which will be addressed with Rybo braces*. I advised she can discuss with her PCP if there any other reasons she may be able to go on disability[,] but I cannot due to her feet as they are doing well.

*Id.* at 1264. The podiatrist noted that "patient was also given information about reducing [her] falls with the use of balance AFOs to stabilize the ankles and reduce postural sway: *a key factor in falls*." *Id.* at 1263. It appears that Plaintiff's podiatrist was accommodating her instability through the recommendation of braces rather than an assistive device like a cane. Later treatment notes indicate Plaintiff was wearing the braces and had "the need for an assistive device *on occasion*." *Id.* at 1257, 1258.

14

Even though Dr. Kennington opined in his medical source statement that a cane was medically necessary for ambulation, substantial evidence in the record from several visits with Plaintiff's podiatrist indicates otherwise. Therefore, no error occurred when the ALJ excluded the use of a cane or assistive device from Plaintiff's residual functional capacity and the accepted hypothetical.

VI. **Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary

evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

## IT IS THEREFORE ORDERED THAT:

1. The ALJ's non-disability decision is vacated;

2. No finding is made as to whether Plaintiff Serena R. Martz was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this decision; and

2. The case is terminated on the Court's docket.


March 9, 2021                                    *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge